UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | CASE NO. 04-14112 |
| **FORTUNE NATURAL RESOURCES CORPORATION** | |
| *Debtor* | Section "B" |
| | CHAPTER 11 |

## REASONS FOR ORDER

This matter came before the court on March 30, 2005 on the request of Barry W. Blank and the Barry W. Blank Living Trust (hereinafter Blank) seeking to depose Fortune Natural Resources Corporation's (hereinafter Fortune) former attorney. Fortune asserts that the attorney-client privilege bars the testimony of the attorney. The court denied the request by order dated April 28, 2005 and assigns the following written reasons for the denial.

**I. Background**

Fortune is an independent, publicly held oil and gas exploration and production company, which invested in oil and gas exploration and development opportunities in Louisiana, Mississippi, and Texas. In February of 2002, Fortune was offered the opportunity to purchase the rights to a database that contained 50,000 miles of seismic data. Fortune and Prime Energy Management Corporation entered into a 25 percent working

-1-

interest in the exploitation of the seismic data, known as the Exploration Agreement. The funding Fortune acquired for this project came from loans and the issuance of preferred stock. Blank, who is a principal shareholder of Fortune, was one of the initial lenders and advanced additional loans when costs for the project exceeded the initial financing.

Augmenting the loans and preferred stock financing, Fortune entered into a credit agreement with EnerQuest. The agreement provided Fortune with nearly $1.4 million in financing and, in exchange, EnerQuest received 1,928,572 three year common stock purchase warrants as well as a lien on Fortune's oil and gas properties.

In the third fiscal quarter of 2002, Fortune sought additional financing. On April 1, 2003, Fortune and EnerQuest entered into a restructuring agreement in which EnerQuest would provide $4 million to Fortune for purposes of liquidity and debt service. On July 1, 2003, Fortune decided not to proceed with the contemplated transaction and informed EnerQuest of this decision. On August 3, 2003 Blank purchased the notes issued by Fortune and held by EnerQuest. Blank's claim in the bankruptcy case totals $1,981,384.68.

On August 2, 2003, EnerQuest filed suit against Fortune in the United States District Court for the Western District of Oklahoma for breach of

contract, claiming $8 million of damages. On June 1, 2004, Fortune filed this Chapter 11 proceeding.

Fortune initially retained Douglas S. Draper ("Draper") and the law firm of Heller, Draper, Hayden, Patrick & Horn, L.L.C. ("Heller firm") to represent it in the Chapter 11 case. The Heller firm was subsequently replaced by the firm of Lowe, Stein, Hoffman, Allweiss & Hauver L.L.P.

Blank contends that he is entitled to question Mr. Draper regarding information and advise that Mr. Draper provided to Fortune during the pendency of the bankruptcy proceedings concerning the value of the EnerQuest's claim for damages. Fortune opposes the request, contending the attorney client privilege protects the advice.

## II. Arguments

Blank asserts that Fortune placed the attorney-client privilege at issue, so that it no longer protects communications between Fortune and Mr. Draper, by asserting that the advice of counsel was the motivating factor in a settlement of the EnerQuest claim in the amount of $8 million. Further, Blank contends that a fraud has been committed which fits the crime-fraud exception to the privilege. Finally, Blank urges that as a secured creditor of Fortune, he is owed a fiduciary duty by Fortune and, therefore, Fortune cannot assert the attorney-client privilege as to Blank.

**III. Law and Analysis**

The attorney-client privilege is the cornerstone of the relationship between attorneys and their clients. The privilege is the mechanism that ensures honest and open communications from clients to their attorneys. Without the assurance that their confidential information will not be revealed by an attorney, clients would not divulge important information and attorneys could not provide adequate advice or representation.[1] This type of evidentiary privilege is "an exception to the general rule that relevant evidence is admissible."[2] The privilege serves the interests of justice by allowing the honest exchange of information between attorney and client, and, therefore, deserves "maximum legal protection,"[3] Accordingly, parties are held to have waived the privilege in cases where there is clear evidence that the privilege is being abused.

    **a. Elements of the Privilege**

The threshold question in attorney-client privilege disputes is whether the privilege exists. The test to determine if an attorney-client privilege exists can be stated as follows:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and

---

[1] *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 862-63 (3rd Cir 1994).
[2] *Id.* at 862.
[3] *Id.* (quoting *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3rd Cir 1992).

>
> (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; [**31] and (4) the privilege has been (a) claimed and (b) not waived by the client.[4]

In the case at bar, the test applies and the communications meet the requirement for privilege. Fortune was a client of Mr. Draper. Further, the communications were between Mr. Draper and Fortune directly and dealt with Mr. Draper's activities as Fortune's attorney. The information requested by Blank constitutes a communication between Fortune and Mr. Draper about legal advice. There is no indication that the communications occurred in the presence of strangers or for the purposes of committing a crime or tort. Finally, the privilege in this case has been claimed and Fortune has given no express waiver. Therefore, the communications between Mr. Draper and Fortune meet all of the criteria and the attorney-client privilege is applicable.

### b. Implied Waiver by Placing the Privilege at Issue

Precedent exists to support the proposition that the attorney-client privilege can be waived if the party claiming the privilege asserts claims or

---

[4] *Id.* at 862.

defenses which places his or her attorney's advice at issue in the litigation.[5] In these cases, the party claiming the privilege asserts a claim or defense that is based on advice of counsel and attempts to prove the claim or defense by disclosing or describing the attorney client communication.[6] In such situations, courts have found that the attorney-client privilege is waived because it stops the exposure of information that the party has made crucial to the resolution of the litigation.[7] Once a party has used communications between himself and his attorney as a claim or defense, it would be unfair to deny the opposing party discovery of the only information relevant to such claim or defense on a claim of privilege. Such use of the attorney-client privilege would transform it from a defense against intrusion into a weapon in the battlefield of litigation.

In the present case, Fortune has not asserted a claim or affirmative defense involving the advice of counsel in connection with plan confirmation. Fortune claims that its decision to settle the EnerQuest claim, and have the claim incorporated into its plan, was to avoid the economic damage to Fortune that a poor outcome in the EnerQuest litigation would cause. Fortune has not pleaded a claim or defense that places the advice of

---

[5] *Id.* at 863.
[6] *In re G.I. Holdings,* 218 F.R.D. 428, 432 (D. N.J. 2003)(plaintiff claimed affirmative defense of "reasonable cause" which allows a taxpayer to avoid penalties if an action was taken pursuant to advice of attorney).
[7] *Rhone-Poulenc Rorer* 32 F.3d at 862-64.

counsel at issue. Additionally, no showing has been made that Fortune relied on Mr. Draper's advice in connection with the EnerQuest claim, or plan confirmation. Therefore the precedent concerning placing advice of counsel at issue is inapposite to this case.

### c. Waiver of Privilege by Providing Information About Privileged Communications

Waiver of the attorney-client privilege can also occur when a party provides information about privileged communications during testimony or a deposition.[8] Before answering questions directly related to the privilege, the party must object on the grounds of privilege in order to avoid waiver.[9] In order to constitute waiver, the questions a party answers must relate directly to privileged communications. The privilege is not waived if a party answers questions about the "general nature of legal services provided by counsel."[10] When Lacoff was questioned about whether Mr. Draper provided a valuation of the EnerQuest claim, Fortune's attorney's objected on the grounds of privilege.[11] Mr. Lacoff was allowed to answer, but the privilege was not waived because the objection maintained it. Further, Mr. Lacoff stated that Mr. Draper did not provide an analysis of the claim. Such

---

[8] *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).
[9] *Id*. at 206 fn 12 (quoting CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2016.1, at 228-29 (2d ed. 1994)).
[10] *Id.* at 206.
[11] *January 13, 2005, Transcript*, at 64.

a statement is not a waiver of the attorney client privilege because it provides general information about advice the attorney did not provide.[12]

In addition, Mr. Lacoff was asked if he relied on advice of counsel as a prudent board member concerning the EnerQuest claim. Mr. Lacoff answered that he did rely on Fortune's attorney's advice concerning the valuation of the EnerQuest claim. However, this statement is a revelation about the general advice given, but not specific communications between Mr. Lacoff and those attorneys.[13] Further, the attorneys Mr. Lacoff was referring to did not include Mr. Draper and, therefore, cannot constitute a waiver as to Mr. Draper's advice.

### d. Waiver of Privilege When used to Assist Fraud

Blank asserts that he should be allowed to question Mr. Draper about whether Mr. Draper's termination related to a possible fraud connected to Fortune's reorganization. Generally, the attorney-client privilege is waived when the client uses the advice of his or her attorney to commit a fraud. In order to sustain the fraud exception a party must: 1) provide a *prima facie* case that a fraud has occurred, and 2) demonstrate that the privileged information bears a relationship to the fraud.[14] For the privilege to be

---

[12] *See United States v. White*, 887 F.2d 267, 271 (D. D.C. 1989) (holding that a clients assertion that his attorneys had fully reviewed a particular matter did not constitute a waiver because none of the actual advice of the attorneys had been divulged).
[13] *Id.*
[14] *Id.*

waived, the communication between the attorney and client must have as its purpose the furtherance of a fraud. "The test is whether the client's purpose is in furtherance of a future fraud or crime; it is not enough that a communication merely provides evidence of fraud."[15]

Blank has failed to demonstrate a *prima facie* case of fraud. In fact, Blank admits in his memorandum that he has no way of knowing whether there has been any fraud.[16] Therefore, the requirements of this exception has not been met and Fortune's attorney-client privilege have not been waived due to allegations of fraud.

### e. Fiduciary Duty of Debtor in Possession to Secured Creditors

Blank argues that because Fortune owes him a fiduciary duty, it cannot assert the attorney-client privilege to bar his requests for information. Fortune, as a debtor in possession, has most of the duties of a trustee in bankruptcy.[17] The debtor in possession has a duty "to protect and conserve the property in his possession for the benefit of creditors."[18] This type of fiduciary duty does not require the debtor in possession to divulge the privileged communications between itself and its attorney. If this were the

---

[15] *Southern Scrap Material Co. v. Flemming*, 2003 WL 21474479, *2 (E.D. La. 2003), *citing In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001).
[16] Blank's *Memorandum Regarding Attorney Client Privilege* at 20.
[17] *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir 1982).
[18] *Id.*

case, then secured creditors would be able to gain access to all communications between debtors in possession and their attorneys. Clearly this is not the intent of the Bankruptcy Code, nor has it been the practice of bankruptcy courts or practitioners.

## IV. Conclusion

To date, Fortune has not placed communications with its attorneys at issue in this Chapter 11 case. Further, Mr. Lacoff's testimony did not constitute a waiver of the privilege and the fraud exception has not been demonstrated. Under these circumstances, the attorney client privilege remains intact, and prevents the questioning of Mr. Draper, the debtor's former attorney.

New Orleans, Louisiana, May 6, 2005.

*J. A. Brown*
_____
Jerry A. Brown
U.S. Bankruptcy Judge