UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                                 CASE NO. 04-14112

FORTUNE NATURAL RESOURCES                          SECTION "B"
CORPORATION

        DEBTOR                                                                  CHAPTER 11

### REASONS FOR ORDER

This matter arises out of the application of Greenwich Legal Associates, LLC ("Greenwich") for allowance of compensation in the amount of $212,765 for substantial contribution under 11 U.S.C. § 503(b) (P-1816), and the objections thereto filed by the Unsecured Creditors' Committee ("UCC") (P-1888), and R. Patrick Sharpe, III, the post-confirmation distribution trustee (P-1914). By order dated August 15, 2006, (P-1921) on the motion of Greenwich, the court bifurcated the hearing such that the August 22, 2006 hearing was in the nature of a summary judgment motion to determine whether there are any genuine issues as to any material fact, and whether Greenwich has a claim for substantial contribution as a matter of law. For the reasons set forth below, the court finds that there are no genuine issues as to any material fact, and that Greenwich has no claim as a matter of law. The application of Greenwich is therefore denied.

      **I.**      **Background Facts**

The relevant parties to this dispute are Greenwich, which is owned by Lacoff Associates, LLC and Brandon Lacoff; Lacoff Associates, LLC is wholly owned by Brandon Lacoff. Brandon Lacoff is the son of Martin Lacoff. Martin Lacoff served as a very active member of the board of directors of the debtor both before the commencement of and during the debtor's

bankruptcy case.

Fortune Natural Resources Corporation ("Fortune" or the "debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* on June 1, 2004 and operated as a debtor in possession during the bankruptcy case. The debtor initially obtained DIP financing from EnerQuest Oil & Gas, LLC ("EnerQuest") and proposed a plan of reorganization supported by Enerquest. A second party, Sundown Energy, LP ("Sundown") joined forces with the UCC and several creditors and at several times requested the court to lift exclusivity so that they might file a competing plan of reorganization. The court declined to lift exclusivity, and a confirmation hearing on the debtor's plan of reorganization was held over several days in the first part of 2005. On July 28, 2005 the court issued an order denying confirmation of the debtor's plan. Thereafter, no further motions to extend exclusivity were made, and Sundown and EnerQuest submitted competing plans, eventually settled their differences, and a plan of reorganization was finally confirmed on April 10, 2006.

Greenwich filed a proof of claim in the amount of $300,000 in the Chapter 11 proceeding based on a Business and Management Consulting Agreement, dated as of February 4, 2004, between the debtor and Lacoff Associates. The Agreement called for the debtor to pay $75,000 per month to Lacoff Associates, and the claim represented that this was for the work Lacoff Associates had done between the February 4, 2004 effective date of the agreement and the June 1, 2004 date of the debtor's Chapter 11 filing. Although the agreement was between Lacoff Associates and the debtor, at some point Greenwich was formed and replaced Lacoff Associates as the claimant through an assignment of claim. An objection was raised to the proof of claim, and the court held a hearing on March 13, 16, 17, and 27, 2006 on Greenwich's motion to

estimate claim for voting purposes under 11 U.S.C. § 502(c). The court estimated the claim for voting purposes only at $40,000, (P-1646) and addressed the objection to claim in an order and accompanying reasons for decision dated September 28, 2006, in which the court allowed the claim for purposes of payment under the plan in the amount of $25,000, finding that as an insider of the debtor, Greenwich was entitled only to the reasonable value of its services and not the full contract amount.[1] At the hearing on the motion to estimate the claim, extensive testimony and evidence were presented to the court with respect to the alleged value of Greenwich's pre-petition services.

On November 26, 2004 the debtor, Brandon Lacoff, and Greenwich filed an application to employ counsel for a special purpose *nunc pro tunc* (P-431). The application requested that the court approve employment of Brandon Lacoff and Greenwich under § 327(e) of the Bankruptcy Code, for the purposes of providing financial and tax consulting as well as valuation and financial planning services to the debtor.[2] Objections were raised to the application to employ, and on December 20, 2004 an *ex-parte* motion to withdraw the application was filed[3]; the court granted the motion to withdraw before the hearing on the motion to employ or the objections thereto.[4]

On May 10, 2006 Greenwich filed the current Application for Allowance of

---

[1] *See* Order (P-1952) and Reasons For Decision (P-1953).

[2] *See* Application to Employ *Nunc Pro Tunc* Brandon E. Lacoff and the firm of Greenwich Legal Associates, LLC as Counsel for a Special Purpose (P-431) at pp. 2-3.

[3] *Ex-Parte* Motion to Withdraw Application to Employ Counsel for a Special Purpose *Nunc Pro Tunc* (P-494).

[4] Order Granting Motion to Withdraw Application to Employ Counsel (P-495).

Compensation for Substantial Contribution seeking payment of $212, 765 for services performed for the debtor between June 1, 2004 and February 14, 2005.[5] The services for which Greenwich seeks reimbursement include financial and tax consulting, valuation and financial planning/modeling as well as preparation of *pro forma* and financial statements for submission of a plan of reorganization.[6] Additionally, Greenwich states it provided advice to the debtor in structuring a financial transaction to preserve the debtor's net operating losses, and assisting the debtor and EnerQuest in preparing a joint plan of reorganization and analyses related to the plan of reorganization.[7] Greenwich further asserts that as a result of its efforts, two competing plans of reorganization for the debtor were submitted and a higher value was paid to all creditors as a result of Greenwich's efforts.[8] Finally, Greenwich asserts that due to its efforts, Sundown became interested in the debtor, and ultimately increased its bid for the debtor by $1 million, resulting in a benefit to all creditors.[9]

## II. Legal Analysis

Summary judgment is proper when no issue of material fact exists and the moving party is entitled to a judgment as a matter of law.[10] All factual questions are viewed in the light most

---

[5] Application for Allowance of Compensation for Substantial Contribution (P-1816). Attached to the application as Exhibit A is a timesheet detailing the work performed post-petition by Greenwich.

[6] Application at ¶ 9 (P-1816).

[7] *Id* at ¶¶ 10-11.

[8] *Id* at ¶¶ 12-13.

[9] *Id* at ¶¶ 16-17.

[10] *Hassan v. Lubbock Independent School District,* 55 F.3d 1075, 1079 (5th Cir. 1995); Bankruptcy Rule 7056(c).

favorable to the party opposing summary judgment.[11]

Greenwich argues that it should be granted attorney's fees and costs for its work for the debtor under the "substantial contribution" provision of § 503(b)(3)(D) and a related provision § 503(b)(4). Those provisions read as follows:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–
> (D) a creditor, an indentured trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.[12]

The United States Fifth Circuit Court of Appeal has held that the development of a concrete standard of substantial contribution is best left to a case by case analysis wherein the bankruptcy judge should make specific and detailed findings on the substantial contribution issue.[13] The Fifth Circuit has issued some general guidance, however, as to the nature of a substantial contribution:

---

[11] *Id* at 1079; *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

[12] Because this case was filed before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and is therefore not subject to the provisions of BAPCPA, all references to the Bankruptcy Code in this opinion will refer to the Code prior to its amendment by BAPCPA.

[13] *In the Matter of DP Partners Ltd. Partnership,* 106 F.3d 667, 673 (5th Cir. 1997).

> The policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process. Thus, a claimant is entitled to administrative fees and expenses if these costs are incurred in making a substantial contribution to a Chapter 9 or 11 case. Generally, services which make a substantial contribution are those which foster and enhance, rather than retard or interrupt the progress of reorganization. . . . Though legislative history is of little help in divining a precise measure of substantial contribution, decisions from other circuits appear to distinguish between creditors' actions that 'incidentally' benefit the estate and creditors' actions that directly and demonstrably benefit the estate.[14]

The Fifth Circuit goes on to emphasize that, "the benefits, if any, conferred upon an estate are not diminished by selfish or shrewd motivations," and that the phrase "substantial contribution" in § 503 means a contribution that is "considerable in amount, value or worth."[15] The court also states that when a bankruptcy judge is determining whether there has been a substantial contribution, he should, "at a minimum. . . weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions. Benefits flowing to only a portion of the estate or to limited classes of creditors are necessarily diminished in weight."[16]

The Eighth Circuit has also offered guidance on the interpretation of § 503(b), stating that, "administrative expenses under § 503(b) constitute priority claims which are paid directly out of the bankruptcy estate. Their allowance may diminish the recovery of creditors and other claimants. For this reason, priority statutes are strictly construed."[17] The Eighth Circuit went on

---

[14] *DP Partners* at 672.

[15] *DP Partners* at 673.

[16] *DP Partners* at 673.

[17] *In re Flight Transportation Corp. Securities Litigation,* 874 F.2d 576, 581 (8th Cir. 1989).

6

to hold that those entities entitled to make a claim under § 503(b) are not fiduciaries of the bankruptcy estate and may take actions that are only marginally or incidentally beneficial to the estate. The bankruptcy estate should not have to pay for those services which primarily benefit others or only incidentally benefit the estate.[18] Thus, "case law has recognized the substantial contribution test as the dividing line between services which are compensable and those which are not. The appropriate test under § 503(b) is whether the services substantially contributed to a successful result, that is, an actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders."[19]

Recent decisions by lower courts in the Fifth Circuit that have addressed substantial contribution requests include *In re Condere Corp.,* 251 B.R. 693 (Bankr.S.D.Miss. 2000), where the court found that a creditor had made a substantial contribution and approved fees and costs of $76,713.35, where the creditor led efforts to locate a viable purchaser for the debtor and thereby boosted the payout on approximately $24 million in allowed claims from 25 cents on the dollar to 65 cents on the dollar.

The court in *In re Datavon,* 303 B.R. 119 (Bankr.N.D.Tex. 2003), awarded $22,917.10 under § 503(b)(3)(D) for work done relating to the formation of the creditors' committee, contesting an employee retention plan, participating in the bidding process, negotiating with creditors over claims, and involvement in the plan process. The *Datavon* court also noted, however, that in that case the debtor, the unsecured creditors committee, and a court-appointed expert all testified that a substantial benefit had been conferred upon the estate, and that the

---

[18] *Flight Transp. Corp.* at 581.

[19] *Id* at 582.

benefit outweighed the fees incurred.

The *In re American Plumbing & Mechanical, Inc.,* 327 B.R. 273 (Bankr.W.D.Tex. 2005) court analyzed § 503(b)(3)(D) thoroughly, concluding that the burden is on the applicant to prove by a preponderance of the evidence that he made a substantial contribution.[20] The court further held that a substantial contribution applicant must show that his services have some causal relationship to the contribution[21] but cautioned that, "no single circumstance controls,; nor is a court to simply proceed down a checklist ticking off traits."[22] The *American Plumbing* court also stated that expected or routine activities in a Chapter 11 case do not constitute a substantial contribution.[23]

*In re Mirant Corp.,* 354 B.R. 113 (Bankr.N.D.Tex. 2006) set forth a list of factors that the court found relevant to an analysis of whether a substantial contribution had been made. It included: 1) a showing of benefit to the estate; 2) whether the services involved in the contribution were undertaken just for the applicant or for the benefit of all parties in the case;[24] 3) whether the applying party would have done the same thing absent the expectation of compensation from the bankruptcy court; 4) whether the benefit conferred through the party's "substantial contribution" exceeds the cost the party seeks to assess against the estate; 5) whether

---

[20] *American Plumbing* at 279.

[21] *Id.*

[22] *American Plumbing* at 281.

[23] *American Plumbing* at 283.

[24] The *Mirant* court recognized, as does this court, that the 5th Circuit in *DP Partners* does not require a party requesting reimbursement for expenses under § 503(b)(3)(D) to have acted selflessly or in a disinterested manner.

the efforts of those seeking compensation were duplicative of those undertaken by statutory fiduciaries; 6) will the applicant suffer a greater loss from the debtor's bankruptcy than do its peers where that loss resulted from expenditures by the applicant that benefitted those same peers; and 7) has the applicant's conduct caused a negative effect on the case that offsets the value of the applicant's contribution.[25]

The court looks to these cases for guidance in assessing whether Greenwich has any potential claim for substantial contribution as a matter of law. Greenwich's application lays out by paragraph the activities it claims amount to a substantial contribution. The court will examine each of these in turn.[26] In paragraphs 7 and 8 of its application, Greenwich states:

7. Pre-petition, Applicant provided financial consulting work for the Debtor, which included tax consulting, valuation and financial planning/modeling.
8. Applicant's pre-petition work resulted in Sundown becoming engaged in serious discussions with Debtor which ultimately resulted in confirmation of a plan supported by Sundown.[27]

The court notes that each of these paragraphs constitutes a claim for work done pre-petition. As noted above, the court has already ruled on Greenwich's claim for services rendered to the debtor pre-petition and has allowed the compensation it has determined appropriate for Greenwich's pre-petition work.[28]

Next, Greenwich states that post-petition:

---

[25] *Mirant* at 132-36.

[26] Paragraphs 1 through 6 of the application contain statements that are not pertinent to this analysis.

[27] Application for Allowance of Compensation for Substantial Contribution (P-1816).

[28] *See* Order (P-1952) and Reasons For Decision (P-1953) awarding $25,000 for these pre-petition services.

9

9. Applicant continued to provide financial consulting work to Debtor, which included tax consulting, valuation and financial planning/modeling. Moreover, Applicant, at the request of Debtor, prepared *pro formas* and financials of a proposed new company, as required by the SEC, for submission of a plan of reorganization.
10. Applicant provided advice to Debtor relative to structuring a financial transaction to preserve Debtor's NOL, which ultimately resulted in a plan being confirmed.[29]

On November 8, 2004 the court approved the application to employ John Werner and the firm of Correro, Fishman, Haygood, Phelps, Walmsley & Casteix, LLP to serve as special corporate securities counsel for the debtor.[30] The application for employment specifically states that, among other things, the firm was hired to review and revise the disclosure statement with respect to securities issues, review and revise organizational documents of a new entity, and advise the company and bankruptcy counsel with respect to other securities law issues that may arise during the proceedings.[31] On December 29, 2004 the court approved the application to employ Harold A. Asher, CPA as an accountant for the debtor.[32] The application to employ states that Harold Asher was hired to provide accounting services and expert testimony with respect to the debtor's financial affairs and plan issues.[33] On October 20, 2004 the court approved the application to employ Smith, Carney & Co., PC as accountants.[34] The application to employ stated that Smith

---

[29] Application for Allowance of Compensation for Substantial Contribution (P-1816).

[30] Order Granting Application to Employ Counsel for a Special Purpose *Nunc Pro Tunc* (P-385).

[31] Application to Employ John Werner as Counsel for a Special Purpose (P-381).

[32] Order Granting Application to Employ Harold A. Asher, CPA as Accountant (P-525).

[33] Application to Employ Harold A. Asher, CPA as Accountant (P-523).

[34] Order Granting Application to Employ Accountant (P-330).

Carney would be engaged to prepare tax returns for the debtor for the 2002 and 2003 tax years.[35]

Additionally, the court approved the employment of several professionals for the UCC, including two law firms; one of the attorneys for the UCC was also a CPA with considerable experience in evaluating the financial issues that arise in a Chapter 11 case as well as tax law.[36] Thus, it appears that the services rendered by Greenwich as stated in paragraph 9 of its application for compensation for substantial contribution were all duplicative of services rendered by far more experienced professionals employed by the debtor and the UCC through orders of the court. The efforts of those seeking compensation that are duplicative of the efforts undertaken by statutory fiduciaries, here the debtor in possession and the UCC, are not considered a substantial contribution.[37] Here, the professionals who had their employment approved by the court more than adequately performed the services Greenwich claimed it also performed. All of those professionals had far more experience-whether as attorneys, accountants or financial advisors- than Brandon Lacoff.[38] Thus, the court finds that as a matter of law, no substantial contribution was made by Greenwich in these areas.

---

[35] Application to Employ Accountant (P-318).

[36] *See* Affidavit of Albert J. Derbes, III, attached as Exhibit E to the Supplemental Opposition to Application for Substantial Contribution and Objection to Claims (P-1937).

[37] *Mirant* at 133-134.

[38] As stated by the court in the Reasons for Decision (P-1953) setting the value of Greenwich's pre-petition claim, although Brandon Lacoff had both M.B.A. and J.D. degrees, he had only a few years of very limited experience in providing the types of services for which he now seeks to be compensated at a rate of $350 per hour. Brandon had previously only been employed in junior positions at Arthur Anderson and Ernst & Young, and he had no significant experience in the oil and gas industry. The court notes that for the most part the professionals approved for employment by the court, who had far more experience, were not charging nearly as large a fee as the exorbitant fee requested by Brandon.

Greenwich also claims its efforts resulted in there being two competing plans of reorganization that produced an increase of $1 million between December 2005 and March 2006 in the plan of reorganization proposed by Sundown.[39] The court is skeptical of this claim given that the increase in the amount of the Sundown plan was made well after the period of June 2004 to February 2005 for which Greenwich seeks reimbursement for its substantial contribution. Further, the affidavit of Danny F. Neal, the Acquisitions and Divestment Manager of Sundown states at paragraph 11: "Sundown did not become interested in Fortune and its assets because of Brandon Lacoff.. . . Sundown did not submit a competing plan of reorganization or improve its plan because of Brandon Lacoff."[40] Thus, the court finds no substantial contribution attributable to Greenwich's claim that its efforts resulted in there being two competing plans of reorganization and produced an increase of $1 million between December 2005 and March 2006 in the plan of reorganization proposed by Sundown.

There are additional problems with Greenwich's substantial contribution claim. Greenwich emphasizes repeatedly that its actions were taken at the request of the debtor. Greenwich- or more accurately, Lacoff Associates- was first engaged by the debtor to provide tax consultation services to the debtor in connection with the use of the debtor's net operating loss tax credits. Thus, the continuation of those types of services provided by Greenwich to the debtor post-petition are in the nature of professional services that should have been approved by

---

[39] Application for Allowance of Compensation for Substantial Contribution at ¶¶ 12-13 (P-1816).

[40] *See* Affidavit of Danny F. Neal attached as Exhibit D to the Supplemental Opposition to Application for Substantial Contribution and Objection to Claims (P-1937). Exhibit C contained another affidavit of a responsible officer of Sundown that also disputed Brandon's claim that he caused or even contributed to Sundown's increasing its offer.

the court in an application to employ under § 327(a) of the Code.[41] As noted above, however, the debtor with court approval engaged other professionals to provide those services. At certain times, it appears that some of the services provided to the debtor post-petition by Greenwich veered into the realm of legal services connected with the tax consulting services already provided by Greenwich. The provision of these types of services should have been approved by the court in an application to employ under § 327(e).[42]

The debtor knew, and Greenwich should have known, that the hiring of any professionals for the furnishing of such services should have been presented to the court for approval. As mentioned above, Greenwich did file an application to be employed under § 327(e) but later withdrew that application when objections were raised. Greenwich contends that it did not withdraw its objection because of the objections, but rather "in order to allow Fortune to maintain exclusivity, and thus, facilitate confirmation of the plan."[43] The court cannot fathom how withdrawing Greenwich's application for employment allowed the debtor to maintain

---

[41] 327(a) reads:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

[42] 327(e) reads:

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

[43] Greenwich's Memorandum in Opposition to the Objection to the Claims of Greenwich and the Objection to the Application for Allowance of Compensation at p. 4 (P-1935).

exclusivity, and Greenwich does not elaborate on that statement. The court does not credit this as a valid reason for withdrawing the application for employment and finds instead that the application for employment was withdrawn because of the objections filed.[44] The Fifth Circuit expressly allows applications for employment of professionals by the debtor in bankruptcy cases to be submitted *nunc pro tunc* under some circumstances, as Greenwich recognized in the application that it later withdrew.[45] The court finds that the present claim for substantial contribution is an attempt by Greenwich to circumvent the proper procedure for employment of professionals in a bankruptcy case, which is not an acceptable route for payment of professional fees.[46] Under §§ 503(b)(3)(D) and 503(b)(4) the applicant must be a creditor seeking reimbursement for reasonable compensation for professional services rendered by an attorney or an accountant of the creditor making the substantial contribution. Greenwich does not appear to have been acting as an accountant or attorney on behalf of itself, a creditor, but rather on behalf of the debtor, and as such does not fall under the special treatment afforded by § 503(b) but instead should have sought employment under § 327.

### III. Conclusion

---

[44] The objections to the application raised serious questions as to Greenwich's qualifications, whether it held or was seeking an interest adverse to the estate, and whether it was disinterested.

[45] *In re Anderson*, 936 F.2d 199 (5th Cir. 1991); *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir. 1983).

[46] *In re Villa Luisa, LLC,* 354 B.R. 345, 348 (Bankr.S.D.N.Y. 2006); *In re Henricks Commerce Park, LLC,* 347 B.R. 115 (Table), 2006 WL 1667100 (6th Cir. B.A.P. 2006) (unpublished opinion).

For the reasons stated above, the court finds that there are no genuine issues as to any material fact which require a further presentation of evidence, and that Greenwich has no claim for substantial contribution under 11 U.S.C. § 503(b)(3)(D) or 503(b)(4) as a matter of law. The application of Greenwich is therefore denied.

New Orleans, Louisiana, March 21, 2007.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge