UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                        CASE NO. 04-14112

FORTUNE NATURAL                               SECTION "B"
RESOURCES CORPORATION

DEBTOR                                        CHAPTER 11

## REASONS FOR ORDER

This matter came on for hearing on August 9, 2006 on the motion of certain former

members of the Board of Directors of Fortune Natural Resources Corporation ("Fortune"

or "debtor") requesting allowance of compensation under 11 U.S.C. § 503(b) (P-1806) and

the objections thereto filed by the Unsecured Creditors' Committee ("UCC") (P-1889) and

R. Patrick Sharp, III (P-1898).[1]  By order dated August 4, 2006, (P-1903) on the motion of

the distribution trustee, the court bifurcated the hearing so that the August 9, 2006 hearing

was in the nature of a summary judgment motion to determine whether there are any

genuine issues as to any material fact, and whether the former directors have a claim under

§ 503(b)(1)(A) as a matter of law.  For the reasons set forth below, the court finds that

there are no genuine issues as to any material fact, and that the former directors have no

claim as a matter of law.  The application of the former directors is therefore denied.

## I.    Background Facts

Fortune was an independent oil and gas exploration and production company.

Fortune filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11

---

[1]  By order dated July 31, 2006, (P-1887), R. Patrick Sharpe, III, the distribution trustee
was joined as an objecting party in the opposition filed by the UCC.

1

U.S.C. § 101 *et seq.,* on June 1, 2004 and operated as a debtor-in-possession during the bankruptcy case.[2]  The debtor initially obtained DIP financing from EnerQuest Oil & Gas, LLC ("EnerQuest") and proposed a plan of reorganization supported by Enerquest.  A second party, Sundown Energy, LP ("Sundown") joined forces with the UCC and several creditors and at several times requested the court to lift exclusivity so that they might file a competing plan of reorganization.  The court declined to lift exclusivity, and a confirmation hearing on the debtor's plan of reorganization was held over several days in the first part of 2005.  On July 28, 2005 the court issued an order denying confirmation of the debtor's plan.[3]  Thereafter, no further motions to extend exclusivity were made, and Sundown and EnerQuest submitted competing plans.  The parties eventually settled, and a consensual plan incorporating for the most part Sundown's plan was confirmed on April 10, 2006.[4]

When Fortune filed for relief under Chapter 11, Martin Lacoff, Dean Drulias, and Barry Feiner, were members of the debtor's board of directors; Paul Berger and Robert Garfield were added as directors in September 2004 (all of whom are hereinafter referred to collectively as the "former directors").  Dean Drulius also acted as an ex officio officer of the debtor during the first three months of the bankruptcy from June through August 2004, receiving $8,500 per month as a salary for the services he performed during this

---

[2]  Because this case was filed before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") and is therefore not subject to the provisions of BAPCPA, all references to the Bankruptcy Code in this opinion will refer to the Code prior to its amendment by BAPCPA.

[3]  See Order Denying Confirmation (P-1043).  As to the grounds for denial of confirmation, see Memorandum Opinion (P-1042).

[4]  (P-1754).

time.[5]  Prior to the filing of the Chapter 11 petition and pursuant to a board resolution, the then directors received warrants or shares of the corporation as payment for their services. Apparently the last time the board was compensated in this way was for the quarter ending June 30, 2004.[6]

The former directors filed a motion on May 10, 2006 asserting that under § 503(b)(1)(A) they should be allowed $275,000 compensation for their services rendered in the preservation of the bankruptcy estate.[7]  The former directors assert that their services were 1) "actual and necessary" as required by § 503(b)(1)(A);  2) benefitted both the bankruptcy estate and its creditors; and 3) reasonable in amount compared to the benefits bestowed upon the estate.  The UCC and the distribution trustee contend that the former directors should not be allowed compensation for their services because their actions did not benefit the estate.  They assert that the former directors unnecessarily delayed the administration of the estate, violated their duty to their shareholders by negotiating benefits for themselves over the creditors, mismanaged the company, and failed to protect assets.

---

[5]  (P-802) at ¶ 2.

[6]  (P-802) at ¶ 2.

[7]  Section 503(b)(1)(A) of the Bankruptcy Code states:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

## II.   Legal Analysis

A trustee operating a business in a Chapter 11 case may incur unsecured debt in the ordinary course of business that is allowable under § 503(b)(1) as a cost of administration.[8] When no trustee has been appointed - the usual case in a Chapter 11- the debtor-in-possession has the powers and duties of a trustee.[9]  Under § 503(b)(1)(A) of the Bankruptcy Code, only the actual and necessary costs and expenses of preserving the estate are allowable as administrative expenses, and these expenses are allowable only upon approval by the court after notice and a hearing.[10]  Allowance of a claim under § 503(b)(1) is not only an allowance against the estate, but it gives the claim a high ranking priority over other claims.[11]  In the Fifth Circuit, "in order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate."[12] Section 503's purpose is permit the debtor's business to operate for the benefit of its pre-petition creditors.[13]  The claimant has the burden of proving that its claim was for actual, necessary costs and expenses of preserving the estate, and the words "actual" and "necessary" are narrowly construed to mean that, "the debt must benefit the estate and its creditors."[14]

---

[8]  11 U.S.C. § 364(a).

[9]  11 U.S.C. § 1107(a).

[10]  11 U.S.C. § 364(b).

[11]  11 U.S.C. § 507(a)(1).

[12]  *In the Matter of Jack/Wade Drilling, Inc.,* 258 F.3d 385, 387 (5th Cir. 2001).

[13]  *In the Matter of Transamerican Natural Gas Corp.,* 978 F.2d 1409, 1415 (5th Cir. 1992).

[14]  *Id.* at 1416.

The Fifth Circuit has determined that a prima facie case under § 503(b)(1) may be established by evidence that, "(1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function as a going concern."[15]  In addition, the claimant has the burden of establishing that its claim is for "actual, necessary costs and expenses of preserving the estate," and that the debt benefits the estate and its creditors."[16]  After the claimant has established a prima facie case, the burden of producing evidence shifts to the objector, but the overall burden of persuasion, by a preponderance of the evidence, remains with the claimant.[17]

The Supreme Court has held that bankruptcy courts have a duty of "rigorous scrutiny" when authorizing a claim against the estate where the claimant is a fiduciary:

> As we have said, the bankruptcy court in passing on allowance of claims sits as a court of equity.  Hence these rules governing the fiduciary responsibilities of directors and stockholders comes into play in allowance of their claims in bankruptcy, in the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.  And its duty to do so is especially clear when the claim seeking allowance accrues to the benefit of an officer, director or stockholder."[18]

Although allowance of an administrative claim requires that the court make a finding that the expense is an actual and necessary cost of preserving the estate, allowance of such claims to an officer, director or stockholder imposes a heightened duty of scrutiny upon the

---

[15] *Id.  See also Jack/Wade Drilling* at 387.

[16] *Transamerican Natural Gas Corp.* at 1416.

[17] *Id.*

[18] *Pepper v. Litton,* 308 U.S. 295, 307-08, 60 S.Ct. 238, 84 L.Ed 281 (1939).

5

court, and the absence of an independent trustee further increases the court's duty to ensure that the transaction is inherently fair to the estate and its creditors.[19]

The majority of courts examining the compensation of a debtor's corporate officers and directors have held that these persons do not fall within the category of "professional persons" who are governed by § 330 of the Code and generally do not need court approval under § 327 to continue in their employment with the debtor.[20]  This assumes, however, that the post-petition terms and conditions are consistent with the pre-petition arrangement.[21]  In this case, two of the former directors, Paul Berger and Robert Garfield, did not become directors until after the Chapter 11 petition was filed, and there has been no claim that any agreement to compensate them was ever reached with the debtor. The pre-petition arrangement for payment of the other former directors - Lacoff, Drulius and Feiner - was that they were to be compensated by warrants or shares of the corporation. There has been no claim by those former directors that an alternate arrangement for payment was reached, only the statement that after the quarter ending June 30, 2004 the practice of payment through warrants or shares of the corporation ceased.  If the payments to those directors had continued to accrue, then that should have been noted on the debtor's monthly operating reports, which it was not.

---

[19]  *In re Microwave Products of America, Inc.,* 100 B.R. 379 (Bankr. W.D.Tenn. 1989).

[20]  3 Collier on Bankruptcy ¶ 330.03[4][a], p. 330-27 (15th ed. rev.)*; In re Bartley Lindsay Co.,* 137 B.R. 305, 308 (D.Minn. 1991); *Matter of All Seasons Industries, Inc.,* 121 B.R. 822 (Bankr. N.D.Ind. 1990); *In re Lyon & Reboli, Inc.,* 24 B.R. 152, 154 (Bankr.S.D.N.Y. 1982).

[21]  3 Collier on Bankruptcy ¶ 330.03[4][a], p. 330-27 (15th ed. rev.); *Matter of All Seasons Industries, Inc.,* 121 B.R. 822 (Bankr. N.D.Ind. 1990) (debtor entitled to continue operating within the ordinary course of business, and where proposal is to continue compensating management on the same terms as they were compensated pre-petition, there is a presumption that the decision is reasonable).

The court finds that on the face of the complaint, the former directors' claims for administrative expenses essentially fall into two categories.  The first type appears to be actions that would be expected from the directors of a company in bankruptcy, including: retaining counsel, being deposed in Rule 2004 examinations, attending board meetings, authorizing a plan of reorganization, involvement in a dispute over the control of the board of directors in which a minority stockholder attempted to install new directors, and involvement in and approval of the sale of company assets.  These are all actions the court would expect to be covered by an agreement for compensation between the debtor and the former directors, and compensation for these types of activities should have been part of payments in the ordinary course of business during the bankruptcy case.  The former directors do not allege an agreement, written or otherwise, that sets forth their compensation by the debtor other than the board resolution in effect at the time the Chapter 11 petition was filed, and from the record, the court has ascertained that no provisions for compensation for the former directors was made in the monthly financial statements filed by the debtor.  The former directors point to no provisions of the Bankruptcy Code that allow them to come at this late date, after the plan has been confirmed, the debtor's estate no longer exists, and the assets of the former debtor are now being administered by the trustee of a trust created under the plan, to make a claim that no one had notice of prior to this application by the former directors.   Thus, the court cannot find as a matter of law, under the motion as filed with the court, that the former directors are entitled to any

payment under the application for compensation under § 503(b)(1)(A) for the services they provided to the debtor in their capacity as directors.

The second group of activities the former directors claim they performed go well beyond the traditional actions in which a director could be expected to engage.  These activities include: filing a Chapter 11 petition, negotiating DIP financing, working with consultants to build financial models, negotiating bids for the plan and soliciting plan sponsorship, preparation of schedules, evaluating breach of contract claims, preparing DIP order and exclusivity order, negotiating with the UCC, drafting settlement agreement documents, preparing objections to claims, settling the Enerquest claim, formulating the notice of approval and balloting procedures, preparing a website on which to post the disclosure statement and plan of reorganization, analyzing claims, drafting plan of reorganization documents, and negotiating bids for a second plan.  This second group of activities consists entirely of activities the court would expect a professional person approved by the court under § 327 to perform.  The term "professional person" was first defined in *Matter of Seatrain Lines, Inc.,* 13 B.R. 980 (Bankr.S.D.N.Y. 1981) as follows: "For the purposes of section 327(a), 'professional person' is limited to persons in those occupations which play a central role in the administration of the debtor proceeding." Numerous courts have adopted this definition.[22]  This court does so as well.

In a case not cited by either party,  *Matter of Schatz Federal Bearings Co.,* 17 B.R. 780 (Bankr.S.D.N.Y. 1982), which the court finds to be both persuasive and factually

---

[22] *Seatrain* at 981.  *See also, In re Palm Coast, Matanza Shores Ltd. Partnership,* 101 F.3d 253 (2nd Cir. 1996); *In re First Merchants Acceptance Corp.,* 1997 WL 873551 (D.Del.); *In re EMGE Aviation Marine Products, Inc.,* 1992 WL 108849 (E.D.Pa.).

similar to the instant case, two former directors also sought compensation for their actions as directors under § 503(b)(1)(A). In reviewing the application, the *Schatz* court found that the directors sought additional compensation not for their retention as directors but as professionals. Examples given by the court were: "Participating in the administration of the Debtor's business; [p]articipating in an ongoing critical analysis of the Debtor's ability to continue to operate; [p]articipating in the resolution of various personnel matters; and performing such services that were beyond the scope of director's duties."[23] Finding that the applicants were "intimately involved in the administration of the debtor's estate," the court held that they, "were not salaried employees of the debtor. Apart from their appointment as directors, for which they were compensated, the applicants were retained by the debtor because of their professional and financial acumen." As such, the court went on, "they are clearly within the category of professional persons who may be employed by the debtor only with the court's approval under Code § 327."[24]

In *In re Canton Jubilee*, 253 B.R. 770 (Bankr.E.D.Tex. 2000), the court stated, "it is clear that § 503(b)(1)(A) cannot serve as a basis for awarding fees to professionals."[25] The court in *Matter of Concrete Products, Inc.,* 208 B.R. 1000 (Bankr.S.D.Ga. 1996) elaborated on this point, stating:

> Section 503(b)(1)(A) authorizes administrative expense treatment of claims for 'actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered.' Section 503(b)(2) authorizes administrative expense priority payments to professionals who meet the requirements of Section 327 and are awarded compensation under

---

[23] *Schatz* at 782.
[24] *Schatz* at 783.
[25] *Canton Jubilee* at 779.

9

Section 330 for actual and necessary services rendered and expense reimbursement.  The first question is whether an individual who serves as a professional within the meaning of Section 327, but who is disqualified for court appointment for failure to meet the disinterestedness requirement of Section 327(a) and who, therefore, cannot be allowed an administrative claim pursuant to Section 503(b)(2), may nevertheless receive compensation under 503(b)(1) for actual and necessary services rendered to preserve the estate.  While some cases authorize payments to professionals who fail to meet the requirements of Section 327, the majority, and the better reasoned cases do not.  The rationale is clear.  To apply Section 503(b)(1) to professional compensation would make the language of Sections 503(b)(2) superfluous.  Congress enacted Sections 327, 330(a), and 503(b)(2) to provide the exclusive method for a debtor's retention of professionals, subject to numerous safeguards, including the requirement of disinterestedness.  A court should not circumvent the limitations placed on retention of professionals by compensating a disqualified professional under Section 503(b)(1)(A).  Instead, Section (b)(1)(A) is properly applicable only to authorize priority treatment of non-professional employee claims, including wages, salaries and commissions (internal citations omitted).[26]

This court agrees with the reasoning of *Concrete Products* and holds that in this court, § 503(b)(1)(A) will not be used to circumvent the process for the court approval of professionals required by § 327 of the Bankruptcy Code.

Section 327 allows the trustee or the debtor in possession to employ one or more professional persons.[27]  The employment requires court approval and a showing that the professional person does not hold an interest adverse to the estate and is disinterested.  The reasons for requiring court approval of the professionals in a bankruptcy case is twofold.  First, "[c]ontrol by the bankruptcy court is necessary to enable the court to contain the

---

[26] *Concrete Products* at 1010; *accord Canton Jubilee*, 253 B.R. 770.

[27] Section 327(a) states:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do no hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

10

estate's expenses and avoid intervention by unnecessary participants.  The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses."[28]  This court approved the employment of many professionals in this case, and the professional fees to date amount to well over $2 million.  To allow the former directors to add on another lump sum of $275,000 is not acceptable.  If the court approves this application, then it might as well relinquish all attempts to control costs in Chapter 11 cases, because it would set a precedent of allowing former directors and officers of debtor companies to come in well after the end of the case and make unforseen claims for additional fee amounts at the expense of creditors who have voted for a plan- or in this case agreed to a consensual plan- that did not include those administrative expenses.

A second reason to require court approval of the employment of professionals, as stated by the Fifth Circuit in *In re West Delta Oil Co., Inc.,* 432 F.3d 347 (5th Cir. 2005), is that professionals, "engaged in the conduct of a bankruptcy case 'should be free of the slightest personal interest that might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration.'"[29]  By definition, directors of a debtor are not disinterested, and so the directors here would not have been eligible to be employed and receive payment for the duties they have performed that were

---

[28]  *In re Haley,* 950 F.2d 588 (9th Cir. 1991) (internal citations omitted).
[29]  *West Delta Oil* at 355 (quoting *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir. 1986).

beyond the scope of traditional director's duties.[30]  To allow them to perform those duties while operating under a statutory conflict of interest and then receive payment under another code section would not be proper.  The court declines to allow such circumvention of § 327.

### III.    Conclusion

For the reasons set forth above, the court finds that the motion by the former directors seeking compensation under 11 U.S.C. § 503(b)(1)(A) cannot be granted as a matter of law.  The motion is therefore denied.

New Orleans, Louisiana, April 12, 2007.

*J. A. Brown*

Jerry A. Brown
U.S. Bankruptcy Judge

---

[30]  11 U.S.C. §§ 101(14)(A) and 101(31)(B)(i).